UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:17-CV-00113-KKC-EBA

KIRBY COLE,                                                                                         PLAINTIFF,

V.            **MAGISTRATE JUDGE'S REPORT
                   AND RECOMMENDATION**

SOUTHERN HEALTH PARTNERS, et al.,                                       DEFENDANTS.

## INTRODUCTION

Plaintiff Kirby Cole ("Cole") filed his complaint under 42 U.S.C. § 1983 against Southern Health Partners, Inc. ("SHP"), Karen Bennett-Baker ("Baker"), and Pike County Detention Center ("PCDC"), hereinafter "Defendants," on July 3, 2017. [R.1]. In his complaint, Cole alleges that he was denied healthcare and medicine in violation of the United States Constitution. This case was initially assigned to Chief Judge Caldwell and referred to Magistrate Judge Atkins to "conduct further proceedings, including preparing findings of fact and recommendations on any dispositive motions." [R. 14]. After careful consideration and detailed review, and for the reasons that follow, this Court **HEREBY RECOMMENDS** that Defendants' Motion for Summary Judgment, [R. 56], be **GRANTED**.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

It is undisputed that Cole was an inmate at the Pike County Detention Center, hereinafter "PCDC," since March 28, 2017. [R. 7 at 2].[1] During the booking process, Cole answered a series of general medical questions with the aid of PCDC employee, Christian Hunt, regarding Cole's

---

[1] Though Plaintiff's certificate of inmate account form [R. 7] has not been certified by jail staff, as required by this Court's Order, [R. 5], the Court has assumed authenticity of this document. [R. 8].

current and past medical history. [R. 56-3 at 1-3]. Therein, Cole indicated that he suffered from a series of medical issues (e.g., heart problems, type 2 diabetes, high blood pressure, back fractures, lung cancer, hepatitis C, and sleep disorders). [*Id.* at 1-2]. Further, Cole indicated that he was taking Elavil, Pradaxa, as well as required three different inhalers for his breathing problems. [*Id.*].

On April 1, 2017, an SHP employee, Nurse Kelsey Evans, completed a history and physical examination, which indicated Cole's current medical diagnoses as stage three non-small stem-cell lung cancer, cirrhosis, a heart condition, and diabetes mellitus type 2. [R. 56-4 at 1]. Thereafter, Cole signed an authorization form, which authorized SHP to fax multiple authorizations for release of information ("ROI") to Walgreens, the University of Louisville's James Graham Brown Cancer Center, and the University of Kentucky's Markey Cancer Center. [R. 56-5]. Subsequent ROIs were sent to KY One Health, Cancer Unit [R. 56-9 at 1], a "Dr. Valano" at Markey Cancer Center [*Id*. at 3], and a Walgreens Specialty Pharmacy for Express Scripts members. [*Id.* at 4]. In addition to a request for medical findings, past physical examinations and diagnoses, and future treatment plans, the ROIs included a notation requesting Cole's list of medications. [*Id.*].

The next day, on April 2, 2017, Cole was again seen by Nurse Evans, after complaining that he was experiencing pain in his head and chest. [R. 56-6 at 1]. Cole expressed a pain level of 10/10. [*Id*]. Regarding the complained-of, chronic conditions, Cole indicated that he suffered from cancer and asthma. Under Defendant Baker's supervision, Cole was prescribed a series of medications and corresponding dosages. [R. 56-6 at 2; R. 56-7].

On April 7, 2017, Cole completed a "Sick Call Slip - Medical Request" form (hereinafter "Sick Slip"); Cole indicated that he needed an appointment with the "oncology cancer

doctor…ASAP," regarding his lung cancer, which he indicated was "terminal." [R. 56-8]. In this form, Cole also indicated having dealt with this problem since December, 2014. [*Id*.] Defendant Baker performed a "Chronic Care Clinic Evaluation" on April 13, 2017. [R. 56-10 at 1-2]. Defendant Baker noted Cole's chronic diagnoses, including: diabetes types 2, since 2014; pulmonary-COPD, using inhalers; hepatitis C, no treatment; cirrhosis; and substance abuse issues, involving heroin, opiates, and alcohol. [R. 56-10 at 1]. Further, Defendant Baker included an updated list of Cole's medications and dosages, the laboratory examinations that had been conducted, and a list of "outside records" from the ROIs that Defendants had yet to receive, as well as a series of recommendations for Cole to follow. [R. 56-10 at 2].

Under the "subjective" component of the evaluation, Defendant Baker noted Cole's claims of his 2014 lung cancer diagnosis, as well as his past treatment of chemotherapy, radiation, and oral chemotherapy. [*Id*.].[2] Further, Defendant Baker included Cole's claims that his last CT scan, which had occurred five months ago, "looked good," and that his port-a-cath had been flushed four months ago. [*Id*]. Cole demanded to go to the hospital for "lung testing." [*Id*.].

Cole's subsequent Sick Slip was completed on June 1, 2017; Cole indicated a pain level of an 8/10 related to a nodule on the right side of his collar bone that was "getting worse." [R. 56-12.] The next day, Cole was seen by two SHP nurses, and two separate clinical pathway forms were submitted. [R. 56-13 at 1-4]. A notation on one of the forms indicated that ROIs had been "sent to multiple facilities" and that they were "waiting for outside records." [*Id.* at 4].

A third Sick Slip was submitted on June 9, 2017. Therein, Cole complained of a knot on the right side of his neck. He was seen on June 12, 2017 by SHP staff.

---

[2] Defendants allege that this is the "very first time" that Plaintiff "told anyone on the medical staff" about his past treatment with oral chemotherapy, known as *Crizotinib*. [R. 56-1].

3

Though it is unclear *which* outside records arrived at PCDC, according to Cole's progress notes, the outside records arrived on June 24, 2017. [R. 56-14 at ¶ 2]. Further, the notes indicated that Cole "was supposed to have [a] PET scan 4 months of starting oral chemo (Crizotinib)." [*Id.*].

On July 3, 2017, Cole filed this suit, alleging that he has "had no cancer treatment from March 28th." [R. 1 at 2].

On July 4, 2017, Cole was taken to the Pikeville Medical Center Emergency Department ("PMC"); while there, several tests were administered. [R. 56-18]; [R. 56-1 at 2-3].

On July 5, 2017 Defendant Baker made a request to PMC's Leonard Lawson Cancer Center requesting an appointment for Cole's PET scan [R. 56-16]. On July 23, 2017, according to Cole's progress notes, Defendant Baker flushed Cole's left port-a-cath with Heplock solution. [R. 56-18]. A notation indicates that Cole tolerated the procedure "well," and that the solution showed "good blood" return. [*Id.*].

Cole was seen by Dr. Ak-Okk, a PMC oncologist, on July 31, 2017.[3] [R. 56-19]. Dr. Al-Okk ordered several prescriptions, which Defendant Baker received on August 2, 2017. [R. 56-19]; [R. 56-20].

Defendants filed a Motion to Dismiss due to Cole's failure to pay a filing fee. [R. 22]. It was denied. [R. 34]. Pursuant to this Court's Scheduling Order [R. 24], Defendants submitted the Motion for Summary Judgment at issue here. [R. 56]. Thereafter, Cole filed a Motion to Move Forward to Trial. [R. 59].

---

[3] In Defendant's Memorandum in Support of its Motion for Summary Judgment, [R. 56-1], Defendants outline the reasons why Plaintiff was not seen before July 31, 2017. [*Id.* at 7-8]. For instance, Defendants claim that Plaintiff was first sent back to PCDC "because he failed to fast as required for the PET scan." [*Id.* at 7 ¶ 3]. In another instance, Defendants claim that Plaintiff was not taken to his second rescheduled appointment because a deputy jailer "got busy and forgot." [*Id.* at 8 ¶ 1].

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In making the determination as to whether summary judgment is warranted, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court's summary judgment analysis "must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate…prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* at 323. But there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* As such, in some cases, the moving party may be "'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (quoting Fed. R. Civ. P. 56). Such a motion "therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). This is so because "[o]ne of the

principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24.

"[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *see also Celotex Corp.* at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## WHETHER PRISONER'S MEDICAL CARE AMOUNTED TO DELIBERATE INDIFFERENCE

The gravamen of Cole's § 1983 complaint is that Defendants violated his constitutional rights by failing to provide him adequate medical care while he was incarcerated. Critical to the success of Defendants' Motion for Summary Judgment is whether Cole has provided sufficient facts to allege that the prison officials providing him medical care were "deliberately indifferent" to his serious needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). Thus, the question of whether Cole has met his burden under the Eighth Amendment's "deliberate indifference" standard is this Court's primary inquiry.

"The Eighth Amendment protects prisoners against the imposition of 'cruel and unusual punishment.'" *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986) (citing U.S. Const. amend. VIII)). The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). For this reason, "[t]he

treatment a prisoner receives in prison and the conditions under which he is confined are subject to strict scrutiny." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Notwithstanding, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle* at 103.

The "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'…[as] proscribed by the Eighth Amendment." *Estelle* at 104 (quoting *Gregg v. Georgia*, 428 U.S.153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* "A prison official is deliberately indifferent when he acts with criminal recklessness, a state of mind that requires that he act with a conscious disregard to a substantial risk of serious harm to the prisoner." *Love v. Taft*, 30 F. App'x 336, 337 (6th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, "[t]his test involves both an objective and subjective component." *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000); *see also Farmer* at 834*; Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

*Estelle* — a § 1983 case filed by a state prisoner — outlines the traditional deliberate indifference standard for establishing inadequate medical care under the Eighth Amendment:

> In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle* at 105-06.

In this case, Cole has not set forth any set of facts, nor provided any evidence, in support of his claims that would entitle him to relief. Cole's allegations of medical negligence against Defendants stem, in part, on their inability to procure his medical records within the course of three months. [R. 1 at 2]. In his complaint, Cole describes that he has terminal stage three non-small stem cell lung cancer and alleges that he has not received any cancer treatment while being incarcerated. [*Id.*]. Cole further alleges that the medical staff had proof of his cancer because of the ROIs that Defendants had faxed to various locations, and that they did indeed have a copy of his chart [R. 1 at 2]; [R. 21]. Therefore, by implication, Cole asserts that Defendants deliberately chose to withhold from him the treatment he deserved, by failing to provide him with proper medication, as proscribed on his charts, to treat his cancer. [*Id.*].

Though Cole's complaint states that he has terminal cancer, on a letter to the undersigned, Cole describes his cancer as being in remission at the time of his initial booking. [R. 26]; [R. 32]. Defendants' alleged failure to provide Cole with his chemotherapy pills, Cole argues, caused his cancer to come back from remission. [R. 32]. Nevertheless, the evidence that Cole has presented to the undersigned fails to establish any form of deliberate indifference, or medical negligence, on the part of Defendants, which caused Cole's cancer to come back. Thus, though Cole has put forth certain medical evidence into the record, it falls short of indicating any causal link between Defendants alleged negligence and Cole's cancer. [R. 1-1]; [R. 47]; [R. 48].

Accompanying Defendants' Motion for Summary Judgment, Defendants submitted a series of medical reports and documents, which demonstrates that Cole was, in fact, treated while being incarcerated. [R. 56-3 – R. 56-20]. On the contrary, apart from Cole's allegations in his complaint, and the various letters submitted to the undersigned, Cole has not put forward any concrete evidence, which indicate that Defendants had knowledge of any substantial risk to

8

Cole's health, and that they willfully chose to disregard it. [R. 1]; [R. 21]; [R. 26]; [R. 28]; [R. 30]; [R. 31]; [R. 35]; [R. 37]. In other words, Cole has failed to prove that Defendants acted with deliberate indifference. On the contrary, to the extent Cole claims that he was denied medical care, there is ample evidence that proves otherwise.

It is well-established that a moving party may be "'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). A Plaintiff "must produce sufficient evidence from which the jury may reasonably reject the [defendants'] explanation." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). Cole has not done so. Cole has failed to establish that any such "deliberate indifference" or medical negligence occurred during his incarceration. In this case, such an unfounded claim is not sufficient to overcome the standard of review for summary judgment. *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). As such, Cole's claim under § 1983 against Defendants for medical negligence is insufficient for relief, and Defendants should be entitled to summary judgment as a matter of law. *Miller v. Freedom Waffles, Inc.*, 2007 WL 628123, 5* (W.D. Ky. 2007) (Heyburn, J.).

## **CONCLUSION**

In essence, Cole has argued that Defendants violated his Eighth Amendment rights by delaying the proper medication and treatment of his cancer, which had been in remission, and therefore, Defendants caused his cancer to come back. For an Eighth Amendment claim based on an alleged delay in treatment, the prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay. *Napier v. Madison County, Ky*., 238 F.3d 739,

742 (6th Cir.2001). Cole has not met this requirement; Cole's identification of the Defendants and the role they played remains unclear. Furthermore, Cole has failed to prove that the medical staff's delay in obtaining his medical records, and the medical care that was provided to him, constitutes deliberate indifference. Because the undersigned finds Cole's claim without merit, an analysis of Defendants' alternative defense of qualified immunity is not warranted.

Thus, for the reasons discussed, based on the facts presented, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment, [R. 56], be **GRANTED**.

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 7th day of September, 2018.



Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge